IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:02CR279 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM AND ORDER |
| RAFAEL BELTRAN-ARCE, ) | |
| ) | |
| Defendant. ) | |

Defendant is before the court for resentencing after remand from the United States Court of Appeals for the Eighth Circuit. *See United States v. Beltran-Arce*, 415 F.3d 949 (2005). This memorandum supplements findings made on the record on November 30, 2005, and December 20, 2005.[1]

**I.    BACKGROUND**

This action has been remanded for resentencing pursuant to *United States v. Booker*, 543 U.S. 220, —, 125 S. Ct. 738, 160 (2005). In *Booker*, the United States Supreme Court found the mandatory United States Sentencing Guidelines were unconstitutional as a violation of the Sixth Amendment. *Id.*, 543 U.S. at —, 125 S. Ct. at 756 (Stevens, J., substantive opinion). The Court found that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* To remedy the violation,

---

[1]To the extent that this memorandum conflicts with any statements on the record, the court notes that the memorandum was drafted with the benefit of further reflection and review of the record, as well as the benefit of additional guidance from the Eighth Circuit Court of Appeals.

the United States Sentencing Guidelines ("the Guidelines") were rendered advisory. *Id.*, 543 U.S. at —, 125 S. Ct. at 738, 757 (2005) (Breyer, J., remedial opinion).

Defendant was convicted, after a jury trial, of one count of conspiracy to distribute and to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846 and three counts of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1). Filing No. 79. The jury found that the government had proved beyond a reasonable doubt that over 500 grams of a mixture or substance containing methamphetamine were involved in the conspiracy and attributable to defendant. The jury also found that $25,420 in United States currency was subject to forfeiture. Filing No. 81.

A revised presentence investigation report ("PSR") was prepared by the United States Probation Office ("Probation Office") before defendant's first sentencing. In the PSR, the Probation Office noted that, based on the prosecutor's version of events, proffers by co-conspirators, police reports, and conversations with DEA investigators and prosecutors, the defendant should be held responsible for the equivalent of 16,303.38 kilograms of marijuana, resulting in offense level 36. The Probation Office further found, based on trial testimony, that defendant was subject to an enhancement for obstruction of justice under U.S.S.G. § 3C1.1 for threatening a defendant in a related case while they were incarcerated together. It also recommended application of a two-level enhancement for use of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1) and denial of a reduction for acceptance of responsibility because defendant "put[] the government to its burden of proof at trial by denying the essential factual elements." Accordingly, the Probation Office determined defendant's total offense level to be 40. Defendant's criminal history category

is I; he has no previous convictions. Based on a criminal history category of I at offense level 40, the Probation Office determined in the PSR that defendant's Guidelines imprisonment range was 292 to 365 months.

At the original sentencing, the government accepted and adopted the findings in the PSR. Filing No. 97. The defendant objected to the obstruction of justice and weapon enhancements and moved for downward departure by reason of extraordinary family circumstances that include having a young son facing surgery in Mexico for a heart defect. Filing No. 99. The court sustained defendant's objection to the obstruction of justice enhancement but overruled defendant's objection to the weapons enhancement. Consequently, the court assigned defendant a base offense level of 36, to which two points were added under U.S.S.G. § 2D1.1(b)(1) for use of a weapon in connection with a drug crime. The court overruled defendant's motion for downward departure finding that it was not authorized under the mandatory Guidelines. The court sentenced defendant to 235 months' imprisonment, which is the low end of the Guidelines range.

Defendant appealed to the United States Court of Appeals for the Eighth Circuit. The Eighth Circuit affirmed defendant's conviction, but remanded for resentencing, finding that to affirm the sentence "despite the district court's erroneous belief that the Guidelines were mandatory would 'seriously affect[ ] the fairness, integrity, or public reputation of the proceedings.'" *Beltran-Arce*, 415 F.3d at 954-55.

The original PSR remains in force for resentencing. The government again accepts and adopts the PSR. The government objects to the court's recalculation of defendant's Guidelines sentence. It contends that the same calculation should be applied whether the

Guidelines are mandatory or advisory and that the Guidelines determination in the first sentencing is the "law of the case," precluding the court from finding otherwise.

Defendant has submitted a sentencing memorandum that the court will construe as an objection to the PSR and as a motion for downward departure under the Guidelines. Filing No. 144. Defendant's contentions raise a constitutional objection to the PSR's calculation of amount and the application of the obstruction-of-justice and weapon enhancements. Defendant has also submitted evidence that relates to his arguments for a sentence outside the Guidelines range in consideration of the factors set forth in 18 U.S.C. § 3553. In an affidavit submitted to the court, defendant admits involvement with the receipt of five pounds of methamphetamine. Filing No. 145. Defendant contends that a sentence of 120 months, the mandatory minimum sentence, is appropriate in this case.

## II. DISCUSSION

### A. Law of the case

The government's contention that the "law of the case" doctrine prevents this court from recalculating defendant's Guidelines sentence is unavailing. The law of the case doctrine prevents relitigation of a settled issue in a case and requires that courts follow decisions made in earlier proceedings to insure uniformity of decisions, protect the expectations of the parties and promote judicial economy. *Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 784 (8th Cir. 1996). When a case has been decided by the Eighth Circuit and remanded to the district court, every question that was presented to and disposed of by the Eighth Circuit in its decree is finally settled and determined. *Klein,* 73 F.3d at 784. The Eighth Circuit follows the majority view that sentencing after a remand should be conducted *de novo*, and, thus, a district judge is not limited to reviewing only those issues related to

the remand order. *United States v. Cornelius*, 968 F.2d 703, 705 (8th Cir. 1992) (stating "[o]nce a sentence has been vacated or a finding related to sentencing has been reversed and the case has been remanded for resentencing, the district court can hear any relevant evidence on that issue that it could have heard at the first hearing"); *see also United States v. Sickinger*, 179 F.3d 1091, 1094 (8th Cir. 1999) (stating that "[w]here one basis for an enhanced sentence is ruled legally impermissible, however, [resentencing] occasionally allows use of another ground for enhancement"). "The policy underlying the presumption of *de novo* resentencing is to give the district court discretion in balancing all the competing elements of the sentencing calculus." *United States v. Saikaly*, 207 F.3d 363, 369 (6th Cir. 2000).

This action was remanded for resentencing pursuant to *Booker*. No aspect of defendant's sentence was "presented to and disposed of" by the Eighth Circuit. This court was given no specific directive from the Eighth Circuit regarding sentencing. Accordingly, the court will reconsider defendant's objections in making its Guidelines calculation.

**B.    Sentencing procedure**

After *Booker*, this court is charged with the duty to "impose a sentence sufficient, but not greater than necessary," to comply with sentencing purposes and to "consider the nature and circumstances of the offense and the history and characteristics of the defendant" in so doing. *See* 18 U.S.C. § 3553(a)(1). The court must further consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care,

5

or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). In addition, the court must consider, as advisory, the kinds of sentence available and the applicable category of offenses and category of defendant as set forth in the Guidelines, and its policy statements, as well as the need to avoid unwarranted sentencing disparities among defendants who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(3)-(6).

The Eighth Circuit Court of Appeals urges district courts to follow a three-step procedure in sentencing. *United States v. Hawk Wing,* No. 05-2263, — F.3d —, 2006 WL 27681, *7 (8th Cir. Jan. 6, 2006). The court must first determine the appropriate Guidelines sentencing range, since that range remains an important factor to be considered in the imposition of a sentence. *United States v. Mashek*, 406 F.3d 1012, 1016 n.4 (8th Cir. 2005); *United States v. Haack*, 403 F.3d 997, 1002 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 276 (2005). Nothing in *Booker* requires the court to determine the appropriate Guidelines sentencing range in any manner other than the way the sentence would have been determined pre-*Booker*. *Id.*

Once the applicable Guidelines range is determined, the court should then decide if a traditional departure is appropriate under Part K and/or § 4A1.3 of the Guidelines. *Haack,* 403 U.S. at 1002. A sentence that includes a formerly permissible departure is "consistent with the now-advisory Guidelines and this is generally indicative of reasonableness." *United States v. Shannon*, 414 F.3d 921, 924 (8th Cir. 2005). However, "[b]ecause the guidelines are now advisory, a reasonable departure is not limited solely to circumstances that the formerly mandatory guidelines framework would have deemed permissible bases for departure." *United States v. Hadash*, 408 F.3d 1080, 1083 (8th Cir.

2005) (stating that *Booker* excised the narrow prescription for when departures are warranted); *cf. Hawk Wing*, 2006 WL 27681 at *7 (implying that district courts' discretion is still constrained to some degree by "traditional departure" rules).  Application of the above considerations will result in a "Guidelines sentence."  *Haack*, 403 F.3d at 1002.

The court then considers all the factors set forth in § 3553(a) to determine whether to impose the Guidelines sentence or a non-Guidelines sentence. *Id. Booker,* 125 S. Ct. at 767.  Calculation of the appropriate Guidelines sentence is only the first step in sentencing decisions after *Booker*, for the court must also consider the § 3553(a) factors before making its ultimate decision.  *United States v. Mickelson*, No. 05-2324, — F.2d —, 2006 WL 27687, *5 (8th Cir. Jan. 6, 2006); *United States v. Winters,* 416 F.3d 856, 860-61 (8th Cir. 2005) (noting that "[t]he Guidelines range is merely one factor," and any possible sentencing disparity resulting from an outside-Guidelines sentence must not be isolated "to the exclusion of all the other § 3553(a) factors").

### C. Reasonableness

Notably, equating reasonableness with a Guidelines sentence in every case will make the Guidelines again mandatory, triggering the concerns raised in *Booker*.  *See Mickelson*, 2006 WL 27687 at *5 (stating that if within-Guidelines sentences were not subject to review for reasonableness, the effect would be to "return[ ] federal sentencing to something like the mandatory guideline system found unconstitutional in *Booker*" and "would encourage trial courts to sentence only within guideline ranges to avoid having sentences overturned on appeal"); *Winters*, 416 F.3d at 861 (noting that a finding that "the range of reasonableness is essentially co-extensive with the Guidelines would effectively render the Guidelines mandatory").  Conformity with a correct application of the formerly-

mandatory guidelines, however, is presumptively reasonable. *United States v. Lincoln*, 413 F.3d 716, 717-18 (8th Cir. 2005), *cert. denied,* 74 U.S.L.W. 3351 (U.S. Dec. 12, 2005); *United States v. Craiglow*, 432 F.3d 816, 820(8th Cir. 2005) (noting that the Eighth Circuit has "not yet held that a sentence within a correctly calculated Guideline range is reasonable *per se*"). The Eighth Circuit has also rejected the notion that any sentence outside the Guidelines is unreasonable. *United States v. Feemster*, No. 05-1995, — F.3d —, 2006 WL 162990, *3  (8th Cir. Jan. 24, 2006).

Thus, under the present sentencing regime, "a guideline sentence, although presumptively reasonable, can still be unreasonable when all the § 3553(a) factors are taken into consideration." *Id.* at *5.  A sentence may be found unreasonable if the trial court:  (1) failed to consider a relevant factor that should have received significant weight; (2) gave significant weight to an improper or irrelevant factor; or (3) considered only appropriate factors, but in weighing those factors committed a clear error of judgment. *United States v. Vasquez,* No. 05-1644/05-1812*,* — F.3d —, 2006 WL 47514, *4 (8th Cir. Jan 11, 2006)*; United States v. Sanchez*, 429 F.3d 753 (8th Cir. 2005) *(*a sentence is "reasonable and not an abuse of discretion" under same standards).  The appellate court's review for reasonableness is abuse of discretion.  *United States v. Pizano,* 403 F.3d 991, 995 (8th Cir. 2005); *see also Feemster*, 2006 WL 162990, *3 (recognizing that appellate court traditionally defers "to the district court's superior position with respect to sentencing decisions").  Importantly, "[b]oth the grounds to support a sentence outside the range and the sentencing judge's discretion in weighing those grounds have increased significantly" under the advisory Guidelines.  *Mickelson*, 2006 WL 27687 at *5.

### D. Determination of defendant's guidelines sentence

Defendant objects to the PSR's determination of drug quantity, the application of adjustments for possession of a weapon and for obstruction of justice and also objects to the PSR's failure to adjust for acceptance of responsibility. He also moves for a downward departure based on family circumstances.

The defendant's constitutional objections relate to the court's finding of sentencing facts by a standard lower than proof beyond a reasonable doubt. The quantum of proof necessary to establish sentencing facts is rooted in the Due Process Clause of the Fifth Amendment. *In re Winship*, 397 U.S. 466, 468 (1969); *Apprendi v. New Jersey,* 530 U.S. 466, 476 (2000). The Due Process Clause is implicated whenever a judge determines a fact by a standard lower than "beyond a reasonable doubt" if that factual finding would increase the punishment above the lawful sentence that could have been imposed absent that fact. *Id.* at 476. Whether a preponderance standard will satisfy due process with regard to all sentencing facts is not entirely clear under Eighth Circuit precedent.[2] *Compare United States v. Garcia Gonon*, No. 05-1698, — F.3d —, 2006 WL 12958, *4 (8th Cir. Jan. 4, 2006) (holding, in reliance on Sixth Amendment case law, that "the constitutional due process argument fails because 'it is appropriate for a district court to consider uncharged relevant conduct for purposes of sentencing, even if it increases the sentence that would otherwise be applied, so long as the sentence does not exceed the

---

[2]Whether the remedy for Sixth Amendment violations—advisory Guidelines—also remedies due process violations has not been determined by the Supreme Court. Importantly, the Supreme Court has emphasized the continuing validity of *Jones v. United States*, 526 U.S. 227, 243, n.6 (1999) and *Apprendi*, 530 U.S. at 490. *See Shepard v. United States*, 544 U.S. —,125 S. Ct. 1254, 1262 (2005); *see also Schriro v. Summerlin*, 542 U.S. 348, 352 n.1, 355 (2004) (2004) (finding that judicial determinations *made beyond a reasonable doubt* are sufficiently reliable that they do not render a trial fundamentally unfair).

statutory maximum authorized for the charged offense.'" *Id.* (quoting *United States v. Red Elk*, 368 F.3d 1047, 1051 (8th Cir. 2004), *vacated and remanded for consideration of Booker, aff'd on reh'g*, 426 F.3d 948 (8th Cir. 2005) (emphasis added) *with United States v. Archuleta*, 412 F.3d 1003 (8th Cir. 2005) (reaffirming, post-*Booker*, its adherence to the principle that "the constitutional protections of due process limit the government's ability to establish sentencing factors that subject a defendant to a sentence wholly unrelated to the substantive offense of which he was convicted" and acknowledging that, at some point, reliance on facts that have not been proved beyond a reasonable doubt to increase a sentence will violate due process, even within the statutory range).[3]

As noted, the PSR recommends a base offense level of 40 and a criminal history category of I, resulting in a sentencing range of 235-365 months. Of course, statements in the PSR are not evidence. *See United States v. Mayer*, 130 F.3d 338, 339 (8th Cir.1997) (stating that "when a defendant objects to portions of the PSR, the district court must base its findings on evidence rather than on the disputed PSR information"). The court's review

---

[3]Notably, even before *Blakely* and *Booker*, the Eighth Circuit suggested that when a district court's consideration of relevant conduct results in a drastic increase in a sentence, the preponderance standard may not satisfy due process. *United States v. Alvarez*, 168 F.3d 1084, 1088 (8th Cir. 1999). It acknowledged "the possibility that the preponderance standard the [Eighth Circuit] approved for garden variety sentencing determinations may fail to comport with due process where . . . a sentencing enhancement factor becomes 'a tail which wags the dog of the substantive offense.'" *United States v. Townley*, 929 F.2d 365, 369 (8th Cir.1991) (quoting *McMillan v. Pennsylvania*, 477 U.S. 79, 88 (1986)); *United States v. Wise,* 976 F.2d 393, 400-01 (8th Cir.1992) (stating that due process concerns must be addressed when the consideration of relevant conduct so greatly increases a defendant's sentence that the conduct "essentially becomes an element of the offense for which the defendant is being punished"). The Eighth Circuit impliedly advocated a "clear and convincing" standard. *See United States v. Brown*, 156 F.3d 813, 817, 816, n.3 (8th Cir. 1998) (finding that the government had met clear and convincing standard with respect to a five-fold increase); *United States v. Murray*, 67 F.3d 687, 690-91 (8th Cir.1995) (assuming without deciding that a nine-fold increase in a sentence based on relevant conduct was the "tail which [wagged] the dog of the substantive offense," but affirming nevertheless under clear and convincing standard); *United States v. Matthews*, 29 F.3d 462, 463 (8th Cir. 1994)(same).

of the evidence shows that the government has not met its burden to show that sentencing enhancements are warranted.

Based upon a review of proffer statements, the Wyoming State Police offense reports and interviews with a DEA agent and the prosecutor, the Probation Office found that an enhancement for possessing a weapon was warranted. The PSR notes that weapons were found in the search of a "stash house" and that "[a]t trial the defendant's brother testified they had been residing in this house." PSR at ¶ 30. The PSR further states that "[DEA] Agent Hursey also confirmed the existence of these weapons, advising they were found in one of the bedrooms of the 'stash house,' where the defendant had been residing and doing business." *Id.* To the contrary, defendant's brother, who was acquitted, did not testify at the trial. Filing No. 77, Witness List. The court will not rely on a probation officer's interview with an investigative agent to establish these facts, but instead will rely on testimony and evidence adduced at the trial and at the first sentencing hearing.

The government bears the burden of proof on an enhancement under § 2D1.1(b)(1). *United States v. Funchness*, 422 F.3d 698, 703 (8th Cir 2005). The government must show that the weapon was present and that it was probable that it was connected with the drug charge. *United States v. Atkins*, 250 F.3d 1203, 1213 (8th Cir. 2001). "The burden of proof requires the government to show a 'temporal and spacial relation . . . between the weapon, the drug trafficking activity, and the defendant.'" *Id.* (quoting *Atkins*, 250 F.3d at 1214).

Although weapons were recovered from the apartment, there is no evidence that connects the apartment and the weapons to this defendant. Any circumstantial evidence

11

that connects the defendant to the apartment and the weapons is exceedingly thin. The evidence at trial does not establish that the defendant was living at the apartment or that he had ever "conducted business" there. Several law enforcement officers testified that there was no bed in the apartment. The law enforcement officers found defendant's brother, Antonio Beltran-Arce, in the apartment when they executed the search warrant. The apartment was not leased to the defendant. Both the defendant and his brother had answered the phone at the apartment. Defendant was arrested driving a Honda Prelude after an arranged meeting with Luis Olivares, who had been arrested earlier in Wyoming for a controlled buy. Drugs were found in the apartment and in a Mercury Cougar parked outside the apartment. Neither of the two vehicles was registered to or owned by the defendant; the Mercury Cougar was registered to "Alberto Gonzales" and "Rebecca Roblato" had purchased insurance for the Honda Prelude. A business card for an auto repair shop was found in the defendant's wallet and an auto repair receipt showing the name "Alberto Gonzales" was found in the Mercury Cougar. Also, a law enforcement officer testified that drug dealers sometimes use fictitious names. This does not amount to evidence sufficient to lead to the inference that the defendant possessed the subject weapons in connection with a drug crime. *See* U.S.S.G. § 2D1.1(b)(1), comment., n.3.

Similarly, the government has not proved that an adjustment for obstruction of justice is warranted. The evidence adduced at the first sentencing hearing shows only that related case defendant Luis Olivares perceived that defendant had pointed to him and gestured at him in a threatening way while both were incarcerated at Pottawatamie County jail. He also perceived that defendant had told others that Olivares was a "snitch." The government did not present any additional evidence with respect to the adjustment. The

court is cognizant that "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness." U.S.S.G. § 3C1.1, comment., n.3. The court finds defendant's allegedly obstructive conduct is more similar to the types of conduct to which the adjustment does not apply than to the types of conduct that warrant the adjustment. *See id.*, n.5.

The court will also sustain defendant's objection to drug quantity. The evidence shows that the amount of methamphetamine for which the defendant can be held responsible is five pounds, or approximately 2.26 kilograms. The jury's verdict establishes the threshold amount of 500 grams. Defendant's admission in his affidavit establishes that he possessed, with the intent to distribute, five pounds of methamphetamine. The evidence adduced at trial is consistent with the finding that Beltran-Arce should be held responsible only for five pounds of methamphetamine. Testimony at trial established that the defendant was an intermediate distributor, or middle-man, for the Omaha area and that the bulk of the significant quantity of methamphetamine seized in Wyoming was bound for Chicago. The evidence at trial showed that Beltran-Arce was to have taken delivery of the drugs on the supplier's return trip from Chicago, after the supplier had distributed most of the methamphetamine. There is no evidence that the defendant knew or should have known of the extent of the conspiracy or of the quantities involved. Nor was the quantity reasonably foreseeable to defendant. The evidence at trial does not establish that any quantity of drugs over five pounds can be attributed to defendant.

The court will also sustain defendant's objection to conversion of $25,420 in cash to amounts of methamphetamine. The evidence shows that the money was to be exchanged for the quantity of drugs that Beltran-Arce was purchasing. To count both the money and the drugs would be double-counting. The evidence shows that defendant

should be held responsible for a quantity of drugs that establishes a base offense level of 34. At offense level 34 and criminal history category I, defendant's Guidelines sentencing range is 151 to 188 months. See U.S.S.G. § 2D1.1(c)3.

Defendant also argues that he should receive a reduction for acceptance of responsibility, relying on the admissions of his affidavit to establish his entitlement to the adjustment. The defendant invoked his constitutional right to a trial. Although exercise of that right does not automatically translate to loss of an acceptance of responsibility adjustment, see U.S.S.G. § 3E1.1, comment. (n.2), the court finds that an adjustment for acceptance of responsibility is not appropriate in this case. Accordingly, the court determines defendant's base offense level is 34, which, at criminal history category I, results in a Guidelines sentencing range of 151 to 188 months.

The court also finds that defendant's motion for downward departure for family circumstances, although arguably warranted, need not be addressed since it would not make a difference to this court's determination of defendant's sentence by virtue of the mandatory minimum sentence of ten years.

### E. Application of § 3553 Factors

The court next considers the factors set forth in § 3553(a) to determine whether to impose the Guidelines sentence or a non-Guidelines sentence. *Haack*, 403 F.3d at 1006. In connection with this determination, the court is mindful that, under the Sentencing Reform Act, it must "impose a sentence sufficient, but not greater than necessary," to comply with sentencing purposes and to "consider the nature and circumstances of the offense and the history and characteristics of the defendant" in so doing. *See* 18 U.S.C. § 3553(a)(1).

With respect to the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, the court finds a sentence of 151 months will satisfy these sentencing goals. Although this is a serious drug offense, the defendant was a relatively small player in the larger conspiracy and can be characterized as a "middle-man." He has no criminal record. In light of the defendant's likely deportation after his release from incarceration, this sentence will afford adequate deterrence and will adequately protect the public. Moreover, defendant's lack of criminal history indicates a low chance of recidivism. There would be only marginal deterrent value to any longer sentence. The court's imposition of five years of supervised release will further protect the public in the event defendant were to return to this country. The prospect of deportation also lessens the importance of the requirement that the court consider the defendant's need for educational or vocational training.

Also, the court finds that a sentence of 151 months will avoid unwarranted sentencing disparity. The court has considered the advisory Guidelines sentencing range in connection with this determination. The court notes also that the Sentencing Commission's statistics show that the mean and median sentences for drug crimes in Nebraska are significantly higher than national mean and median sentences. *See* U.S. Sentencing Comm'n, *Sourcebook of Federal Sentencing Statistics*, App. B (2003), *available at* http://www.ussc.gov/ANNRPT/2003. The court also considers the fact that, in this jurisdiction, defendants have traditionally been reluctant to provide information to the Probation Office for preparation of presentence investigation reports, thus skewing the Probation Office's calculations in favor of the prosecution in many cases. The court has also considered that if defendant had been prosecuted for this crime in state court, he

would have been likely to serve a sentence no longer than ten years at the outside.  *See, e.g., United States v. Clark*, No. 05-4274,  — F.3d —, 2006 WL 60273, *4 (4th Cir. Jan. 12, 2006) (noting that although § 3553(a)(6) has been interpreted to generally bar federal courts from basing a sentence on consideration of state sentences, "given the substantial, albeit not unchecked, discretion federal district courts enjoy after [*Booker*], they can take into account state sentencing practices in certain cases.").

Further, the court notes that defendant's co-defendant was acquitted and the principal witness against him was sentenced to thirty months of imprisonment after cooperating with prosecutors.  To the extent that this court is able to discern any sentencing disparity, the court finds that the sentence imposed herein will not materially impair the achievement of the sentencing goal of imposing similar punishments upon similarly situated defendants.

In consideration of the foregoing, the court finds that the defendant should be sentenced to 151 months of imprisonment and five years of supervised release, subject to the special terms and conditions set forth in the amended judgment.  Defendant is to be given credit for time served.

An amended judgment and order of commitment, together with a statement of reasons, in conformity with this Memorandum and Order will issue this date.

DATED this 2nd day of February, 2006.

BY THE COURT:

**s/ Joseph F. Bataillon**
United States District Judge